UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAZETTA Z.,[1]

      Plaintiff,

v.                                              23-CV-868 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

## DECISION AND ORDER

Plaintiff Dazetta Z. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 8. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 11, 12. For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB") and her application for Supplemental Security Income ("SSI"), both filed on September 20, 2017.[2] Tr. 188–97.[3] Plaintiff's applications were initially denied, and she requested a hearing before an administrative law judge ("ALJ"). Tr. 100–08. Following the hearing, at which Plaintiff was represented by counsel, ALJ Brian Battles issued a decision finding that Plaintiff was not disabled. Tr. 15–27. On February 24, 2022, the United States District Court for the Western District of New York entered a stipulation and order remanding Plaintiff's case for further proceedings. Tr. 879–80. On August 12, 2022, the Appeals Council ("AC") entered an order remanding the case to the ALJ. Tr. 873–78.

On April 4, 2023, Plaintiff once again appeared before ALJ Battles. Tr. 792–836. And on April 26, 2023, ALJ Battles issued a written decision finding Plaintiff not disabled under the Social Security Act. Tr. 771–85. Plaintiff timely sought judicial review in this Court.

---

[2] Plaintiff applied for both DIB and SSI. To receive DIB, a claimant must show that he or she became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022). SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filing at Dkt. 5 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 5 are hereby denoted "Tr. __."

## LEGAL STANDARDS

I. **DISTRICT COURT REVIEW**

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's

ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

### I. THE ALJ'S DECISION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 5, 2016, her alleged onset date. Tr. 774. The ALJ also found that Plaintiff suffered from the following severe impairments: diabetes mellitus,

diabetic neuropathy, degenerative disc disease, hypertension, and obesity. *Id.* The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 777.

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally climb ramps and stairs and can never climb ladders, ropes, and scaffolds. [Plaintiff] can never work in hazardous environments, such as at unprotected heights or around moving mechanical parts.

Tr. 779.

The ALJ found that Plaintiff could perform past relevant work as "a collection clerk and hair stylist." Tr. 783; *see Dictionary of Occupational Titles* 241.357-010, 1991 WL 672249 (Jan. 1, 2016); *id.* 332.271-018, 1991 WL 672808 (Jan. 1, 2016). As such, according to the ALJ, Plaintiff had not been under a disability from October 5, 2016, through May 1, 2023, the date of decision. Tr. 785.

## II. PLAINTIFF'S ARGUMENT

Plaintiff makes two arguments for judgment in her favor. First, she argues that the ALJ erred in assessing the opinion of Matthew Graziano, PA. Dkt. 8-1 at 13–17. Second, Plaintiff argues that the ALJ improperly assessed the severity of Plaintiff's mental impairments. *Id.* at 17–22. For the reasons that follow, Plaintiff's arguments lack merit.

III.  ANALYSIS

**A. The ALJ properly assessed PA Graziano's opinion.**

Plaintiff argues that the ALJ erred in evaluating the opinion of PA Graziano. More specifically, Plaintiff argues that the ALJ "relied on selectively chosen evidence," and failed to "fully explain supportability or consistency." Dkt. 8-1 at 13.

Under 20 C.F.R. § 404.1520c, an ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. § 404.1520c(a)-(c). The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). An ALJ must explain his or her approach with respect to the first two factors but need not expound upon the remaining three. *Id.* § 404.1520c(b). An ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id.* § 404.1520c(b)(1).

With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be. *Id.* § 404.1520c(c)(1). As to consistency, the regulations provide that "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more

7

persuasive the medical opinion or prior administrative finding will be." *Id.* § 404.1520c(c)(2).

On September 1, 2017, Plaintiff presented to St. Vincent Health Center for a physical. Tr. 336. Plaintiff was seen by PA Graziano, who completed a "medical examination for employment assessment" form. *Id.* at 322–23. PA Graziano opined, among other things, that Plaintiff was "very limited" in lifting, carrying, pushing, pulling, and bending, and "moderately limited" in using her hands. *Id.* at 323 (capitalization omitted). And the ALJ assessed that opinion, ultimately finding it to be unpersuasive. *Id.* at 782.

In doing so, the ALJ first considered the opinion's supportability. The ALJ noted that PA Graziano "only began treating [Plaintiff] in 2017," Tr. 782, and in fact, the date of the opinion marked Plaintiff's first treatment with PA Graziano, *see Id.* at 336–39. The ALJ went on to explain that the opinion "not[ed] only [Plaintiff's] diagnoses and treatment recommendations." *Id.* at 782. And neither PA Graziano's opinion, *id.* at 322–23, nor the accompanying treatment notes, *id.* at 326-30, provided detailed explanations for the limitations found. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (describing "supportability" as "how well supported an opinion is by medical evidence and the explanations given in the opinion").

The ALJ then discussed consistency, noting that PA Graziano's opinion was "not generally consistent with the longitudinal record." Tr. 782. Specifically, the ALJ explained that, among other things, Plaintiff's physical examination findings,

8

testing, conservative treatment, subjective complaints, and activities of daily living were consistent with PA Graziano's postural and environmental limitations, but "not consistent with [PA Graziano's] manipulative limitations." *Id.*; *see Spottswood*, 2024 WL 89635, at *1 (describing "consistency" as "how consistent an opinion is with other evidence in the record").

In support of her argument that the ALJ "relied on selectively chosen evidence," Plaintiff cites to various notes in the record that she claims support PA Graziano's findings. Dkt. 8-1 at 15–16 (citing Tr. 336, 338, 340, 343, 940, 1192, 1196).[4] But the ALJ's decision reveals that he considered a range of opinion evidence. For example, the ALJ credited the opinion of Samuel Balderman, MD, who opined that Plaintiff had "mild limitations to sustained physical activities." Tr. 782. Additionally, the ALJ noted the opinion of Hongbiao Liu, MD, who similarly found that Plaintiff had "mild to moderate limitations." *Id.* at 783. While Plaintiff may disagree with the weight the ALJ assigned to each piece of evidence, it is not the province of this Court to "substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[A]n [ALJ] is free to . . . choose between properly submitted medical opinions . . . ."). Because the ALJ properly considered

---

[4] Plaintiff points to notes explaining that "[s]he was also on Effexor for major depressive disorder," and that she had "difficulty concentrating." Dkt. 8-1 at 15 (citing Tr. 338, 940). Plaintiff additionally credits her own hearing testimony, stating that "she had symptoms of leg cramping with sitting." *Id.* at 16 (citing Tr. 812–13). While these records may relate to Plaintiff's mental and postural limitations, they offer little support for Plaintiff's manipulative limitations.

the supportability and consistency of PA Graziano's opinion, particularly in light of other evidence in the record, Plaintiff's first argument is without merit.

### B. The ALJ properly assessed the severity of Plaintiff's mental impairments.

Plaintiff additionally argues that the ALJ failed to assess her mental impairments at step two. Dkt. 8-1 at 17–22. More specifically, she argues that the ALJ "erred while considering the special technique[] and in failing to find any mental limitations in the RFC, whether impairments were severe or non-severe." *Id.* at 17.

The effects of a plaintiff's mental disorder are evaluated on a five-point rating scale. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(a-e). A mental impairment rated as "none" or "mild" will generally not qualify as "severe," whereas those rated as "moderate," "marked," or "extreme" will qualify as "severe" under step two. *Schafenberg v. Saul*, 858 F. App'x 455, 456 (2d Cir. 2021). An ALJ "will generally conclude that [a plaintiff's] impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [a plaintiff's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *see Cherry v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 658, 661 (2d Cir. 2020) (summary order) (finding an ALJ properly determined mental impairments were not severe based on substantial evidence in the record showing a plaintiff's mental impairments caused only mild limitations).

At step two, the ALJ found that "[b]ecause [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the

functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities, they are nonsevere." Tr. 776. In reaching that conclusion, the ALJ considered various opinions related to Plaintiff's mental impairments. *Id.* at 775–77.

For example, the ALJ considered the opinion of Susan Santarpia, Ph.D. Tr. 776. Dr. Santarpia, who evaluated Plaintiff in December 2017, noted that Plaintiff could "understand, remember, and apply simple as well as complex directions and instructions," as well as "use reason and judgment to make work related decisions." *Id.* at 402. Additionally, Dr. Santarpia found that Plaintiff could "interact adequately with supervisors, coworkers, and the public," and "sustain concentration and perform a task at a consistent pace." *Id.* She concluded that Plaintiff would have "mild limitations in regulating emotions, controlling behavior, and maintaining well-being." *Id.*

The ALJ found Dr. Santarpia's opinion persuasive, explaining that the opinion was "supported by . . . examination notes and [Plaintiff's] performance during her consultative examination." Tr. 776. And the ALJ concluded that Plaintiff's exam findings, conservative treatment, subjective complaints, and activities of daily living were consistent with "no more than mild b-criteria limitations." *Id.*

The ALJ similarly credited opinions of the State's medical consultant, Gary Ehlert, MD. Tr. 73–97. Dr. Ehlert concluded that Plaintiff had no "severe mental medically determinable impairment," finding that "she had a mild limitation in

adapting or managing herself and no limitations in the remaining b-criteria areas of functioning." *Id.* at 776. The ALJ determined that Dr. Ehlert's opinion was "significantly persuasive" and well supported by other evidence in the record. *Id.*; *see Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) ("A consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record.").

Additionally, the ALJ considered the opinion of James Poppo, LMSW. Tr. 777. Mr. Poppo opined, among other things, that Plaintiff was "seriously limited" in working with others, taking instructions, dealing with stress, and interacting with the public. *Id.* at 1430–31. Mr. Poppo also found that Plaintiff was "unable to meet competitive standards" in responding appropriately to change, dealing with work-related stress, and completing a normal workday without interruption. *Id.* at 1430. But the ALJ found Mr. Poppo's opinion unpersuasive, noting that it was based primarily on Plaintiff's self-reported symptoms and inconsistent with other evidence in the record. *Id.* at 777. And to the extent that Mr. Poppo's evaluation was inconsistent with other evidence, that conflict was for the ALJ to resolve. *See, e.g., Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

Plaintiff additionally argues that the ALJ erred "in failing to find any mental limitations in the RFC, whether impairments were severe or non-severe." Dkt. 8-1 at 17. But when substantial evidence in the record supports only mild limitations in mental functioning, an ALJ is not required to include mental limitations or

12

restrictions in the RFC. *Lynette W. v. Comm'r of Soc. Sec.*, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (finding "mild limitations do not necessarily require the addition of mental limitations in the RFC"); *see Katherine R. v. Comm'r of Soc. Sec.*, 2021 WL 5596416, at *6–7 (W.D.N.Y. Nov. 30, 2021) ("Where an ALJ's assessment of only mild limitations in mental functioning are supported by substantial evidence in the record, the ALJ is not required to include mental limitations or restrictions in the RFC."); *Crumedy v. Comm'r of Soc. Sec.*, 2017 WL 4480184, at *6 (N.D.N.Y. Oct. 6, 2017) ("[E]vidence that is present does not suggest that this impairment imposed more than [a] minimal effect on Plaintiff's functioning that would have needed to be accounted for in the RFC.").

In sum, while Plaintiff points to evidence in the record suggesting that she had greater mental limitations than the ALJ determined, it is not the function of this Court to re-weigh evidence or consider *de novo* whether Plaintiff is disabled. *See Schaal v. Apfel*, 134 F.3d 496, 500–01 (2d Cir. 1998). Rather, so long as an ALJ's factual findings are supported by substantial evidence, this Court must give them "conclusive effect." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Accordingly, because the ALJ's step-two finding was supported by substantial evidence, this Court will not second-guess it. For that reason, Plaintiff's second argument also lacks merit.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross-motion for judgment on the pleadings (Dkt. 11) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 8). The Clerk of the Court will close this case.

SO ORDERED.

Dated:   October 28, 2025
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE